UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KEVIN JOHNSON, Individually and For Others Similarly Situated<br><br>v.<br><br>NES GLOBAL, LLC | **Case No.** __4:23-cv-04579__<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Kevin Johnson ("Johnson") brings this collective action to recover unpaid overtime and other damages from NES Global, LLC ("NES") under the Fair Labor Standards Act ("FLSA").

2. NES employed Johnson as one of its Day Rate Workers (defined below).

3. Johnson and the other Day Rate Workers regularly work more than 40 hours a week.

4. But NES does not pay Johnson and the other Day Rate Workers overtime.

5. Instead, NES pays Johnson and the other Day Rate Workers a flat amount for each day worked, regardless of the total number of hours they worked in a workweek (a "day rate").

6. NES pays Johnson and the other Day Rate Workers under its uniform day rate pay scheme regardless of any individualized factors.

7. NES's uniform day rate pay scheme violates the FLSA by depriving Johnson and the other Day Rate Workers of overtime wages for all hours worked after 40 in a workweek.

### JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

1

9. This Court has general personal jurisdiction over NES because NES is headquartered in Houston, Texas and, therefore, resides in Texas.

10. Venue is proper because NES is headquartered in Houston, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

11. Johnson worked for NES as a Health, Safety, & Environment ("HSE") Coach from approximately March 2011 until January 2022.

12. Throughout his employment, NES paid Johnson a day rate with no overtime.

13. Johnson's written consent is attached as **Exhibit 1**.

14. Johnson brings this collective action on behalf of himself and all other similarly situated NES employees who were paid under its illegal day rate pay scheme.

15. NES paid each of these employees a flat amount for each day they worked and failed to pay them overtime when they worked more than 40 hours in a week in willful violation of the FLSA.

16. The putative collective of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, NES who were paid day rate with no overtime at any time during the past 3 years ("Day Rate Workers").**[1]

17. NES is a Florida limited liability company headquartered in Houston, Texas.

18. NES can be served through its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

---

[1] The Day Rate Workers expressly excludes any individuals who opted into *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.) **and** did not work for NES after the opt-in period closed in the *Alvarez* matter on December 20, 2021, as well as any individuals who opted into *Rivas v. NES Global*, No. 4:23-CV-00885 (S.D. Tex.).

**FLSA COVERAGE**

19. At all relevant times, NES was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all relevant times, NES was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all relevant times, NES was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

22. At all relevant times, NES has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

23. At all relevant times, the Day Rate Workers were NES's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

24. At all relevant times, Johnson and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

25. NES uniformly paid Johnson and the other Day Rate Workers under its day rate pay scheme.

26. NES applied its illegal day rate pay scheme to Johnson and the other Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

27. As a result of NES's uniform day rate pay scheme, Johnson and the other Day Rate Workers did not receive premium overtime wages when they worked more than 40 hours in a workweek.

28. NES's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

29. NES "provide[s] comprehensive, customer-focused Environmental, Health, and Safety (EH&S) consulting and education solutions that ensure regulatory compliance" to clients across the country.[2]

30. To meet its business objectives, NES hires workers, like Johnson and the other Day Rate Workers, who it "staffs" to its clients to provide EH&S services.

31. NES uniformly pays these employees (including Johnson and the other Day Rate Workers) under its illegal day rate pay scheme.

32. NES routinely schedules Johnson and the other Day Rate Workers to work more than 40 hours a week.

33. Instead of paying Johnson and the other Day Rate Workers overtime wages, NES only pays them their set day rates for their actual days worked.

34. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice for similar work.

35. For example, Johnson worked for NES as an HSE Coach from approximately March 2011 until January 2022.

36. As an HES Coach, Johnson's primary responsibilities included overseeing the work of third-party contractors to ensure projects were completed in accordance with well-established environmental and safety regulations and industry standards.

---

[2] https://nesglobal.net/about-nes/ (last visited December 6, 2023).

4

37. Throughout his employment, Johnson typically worked 13 to 15 hours a day for 7 days a week (or 91 to 105 hours a week).

38. Johnson worked in accordance with the schedule set by NES.

39. Despite knowing Johnson regularly worked overtime, NES did not pay him overtime wages.

40. Instead, NES paid Johnson under its illegal day rate pay scheme.

41. Specifically, NES paid Johnson approximately $1,100 each day he actually worked, regardless of the number of hours he worked that day (or that week) and failed to pay him overtime when he worked over 40 hours in a week:

| Project Name | Location | Day of Week Saturday | Day of Week Sunday | Day of Week Monday | Day of Week Tuesday | Day of Week Wednesday | Day of Week Thursday | Day of Week Friday | Regular | Overtime |
|---|---|---|---|---|---|---|---|---|---|---|
| PowerNap Sleeper Installation | Harvey Intervention | 11/27/21 | 11/28/21 | 11/29/21 | 11/30/21 | 12/01/21 | 12/02/21 | 12/03/21 | | |
| | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 7.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | | | 0.0 | 0.0 |
| | | | | | | | WEEKLY TOTALS | | 7.0 | 0.0 |
| | | | | | | | TOTAL HOURS | | 7.0 | 0.0 |

For Hourly Rates: Enter # of Actual Hours
For Daily Rates: Enter "1" to indicate 1 day worked or "1/2" for 1/2 day worked

42. NES pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on Johnson.

43. That is, NES pays its other Day Rate Workers on a day rate basis and fails to pay them overtime when they work more than 40 hours in a week.

44. Like Johnson, the other Day Rate Workers typically work 13 to 15 hours a day for 7 days a week (or 91 to 105 hours a week).

5

45. And like Johnson, the other Day Rate Workers work in accordance with the schedule set by NES.

46. Despite knowing its Day Rate Workers regularly work overtime, NES does not pay them overtime wages.

47. Instead, NES pays its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that day (or that week) and fails to pay them overtime when they work more than 40 hours in a week in willful violation of the FLSA.

48. NES never paid Johnson and the other Day Rate Workers on a "salary basis."

49. NES does not pay Johnson and the other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

50. Rather, NES only pays Johnson and the other Day Rate Workers their set day rates for the actual days they work.

51. If Johnson and the other Day Rate Workers do not work, they do not get paid.

52. Johnson's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

53. Thus, NES never paid Johnson and the other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

54. Because NES fails to pay Johnson and the other Day Rate Workers on a "salary basis," they are non-exempt employees entitled to overtime wages.

55. But NES does not pay Johnson and the other Day Rate Workers overtime wages when they work more than 40 hours in a workweek in willful violation of the FLSA.

6

## COLLECTIVE ACTION ALLEGATIONS

56. Johnson incorporates all other paragraphs by reference.

57. Like Johnson, the other Day Rate Workers are uniformly victimized by NES's illegal day rate pay scheme.

58. Other Day Rate Workers worked with Johnson and indicated they were paid in the same manner, performed similar work, and were subject to NES's same illegal day rate pay scheme.

59. Based on his experience with NES, Johnson is aware NES's illegal day rate pay scheme was imposed on the Day Rate Workers.

60. The Day Rate Workers are similarly situated in the most relevant respects.

61. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

62. Any relevant exemption defenses would require NES to pay the Day Rate Workers on a "salary basis."

63. Because NES fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by those employees are largely irrelevant.

64. The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a week (which, by definition, they were).

65. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent collective treatment.

66. Rather, NES's uniform day rate pay scheme renders Johnson and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

67. NES's records reflect the number of days and/or hours the Day Rate Workers worked each week.

68. NES's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a week.

69. The backwages owed to Johnson and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

70. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NES's records, and there is no detraction from the common nucleus of liability facts.

71. Therefore, the issue of damages does not preclude collective treatment.

72. Johnson's experiences are therefore typical of the experiences of the other Day Rate Workers.

73. Johnson has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent collective treatment.

74. Like each Day Rate Worker, Johnson has an interest in obtaining the unpaid wages owed under federal law.

75. A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

76. Absent this collective action, many Day Rate Workers will not obtain redress for their injuries, and NES will reap the unjust benefits of violating the FLSA.

77. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

78. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

79. Johnson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

80. As part of its regular business practices, NES intentionally, willfully, and repeatedly violated the FLSA with respect to the Day Rate Workers.

81. NES's illegal day rate pay scheme deprived Johnson and the other Day Rate Workers of the overtime wages they are owed under federal law.

82. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

83. The Day Rate Workers are known to NES, are readily identifiable, and can be located through NES's business and personnel records.

### NES's FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

84. Johnson incorporates all other paragraphs by reference.

85. NES knew it was subject to the FLSA's overtime provisions.

86. NES knew the FLSA required it to pay non-exempt employees, including Johnson and the other Day Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

87. NES knew Johnson and each Day Rate Worker worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

88. NES knew it paid Johnson and the other Day Rate Workers on a daily basis.

89. NES knew it paid Johnson and the other the Day Rate Workers a day rate (with no overtime for hours worked over 40 in a week).

90. NES knew it did not pay Johnson and the other Day Rate Workers on a "salary basis."

91. NES knew it did not pay Johnson and the other Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

92. NES knew that any base "salary" Johnson and the other Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

93. Thus, NES knew its day rate pay scheme did not satisfy the "salary basis" test.

94. NES knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to Johnson and the other Day Rate Workers.

95. Nonetheless, NES uniformly misclassified Johnson and the other Day Rate Workers as exempt and refused to pay them overtime.

96. NES's decision to misclassify Johnson and the other Day Rate Workers as exempt employees was neither reasonable, nor was it made in good faith.

97. Likewise, NES's failure to pay Johnson and the other Day Rate Workers overtime was neither reasonable, nor was its decision not to pay these employees overtime made in good faith.

98. NES knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

99. NES knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay scheme that systematically deprived Johnson and the other Day Rate Workers of overtime wages for their hours worked over 40 in a workweek in violation of the FLSA.

100. Indeed, NES has been sued repeatedly for failing to pay workers overtime, including for the same illegal day rate pay scheme that is the subject of this action. *See, e.g.*, *Castillo v. NES Global, LLC*, No. 2:23-CV-02628-WBS-JDP (E.D. Cal.); *Hernandez v. NES Global, LLC*, No. 4:23-CV-03803 (S.D. Tex.); *Rivas v. NES Global, LLC*, No. 4:23-CV-00885 (S.D. Tex.); *Molleur v. NES Global, LLC*, No. 1:22-CV-00777 (D.N.M.); *Sachin-Amin v. NES Global, LLC*, No. 8:21-CV-00567 (C.D. Cal.); *Richardson v. NES Global, LLC*, No. 4:20-CV-00223 (S.D. Tex.); *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.).

## CAUSE OF ACTION

## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

101. Johnson incorporates all other paragraphs by reference.

102. Johnson brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Workers.

103. NES violated, and is violating, the FLSA by employing non-exempt employees (Johnson and the other Day Rate Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

104. NES's unlawful conduct harmed Johnson and the other Day Rate Workers by depriving them of the overtime wages they are owed.

105. Accordingly, NES owes Johnson and the other Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

106. Because NES knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, NES owes Johnson and the other Day Rate Workers these wages for at least the past 3 years.

107. NES is also liable to Johnson and the other Day Rate Workers for an amount equal to all their unpaid overtime wages as liquidated damages.

108. Finally, Johnson and the other Day Rate Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

109. Johnson demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Johnson, individually and on behalf of the other Day Rate Workers, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

    b.    An Order finding NES liable to Johnson and the other Day Rate Workers for unpaid overtime wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

    c.    A Judgment against NES awarding Johnson and the other Day Rate Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Dated: December 6, 2023.

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By:     */s/ Michael A. Josephson*
Michael A. Josephson
TX Bar No. 24014780
Federal ID No. 27157
Andrew W. Dunlap
TX Bar No. 24078444
Federal ID No. 1093163
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR JOHNSON
& THE DAY RATE WORKERS**